PICKERING, Circuit Judge,
dissenting:
I respectfully dissent.
As an initial matter, I disagree with the majority’s conclusion that “unable to perform all of the material and substantial duties of his occupation” can only mean unable to perform “each and every one” of the material and substantial duties of an occupation, so that if an employee can perform even one material and substantial duty of his or her occupation, the employee is not disabled. Although this is a reasonable interpretation of the policy language, the policy language is ambiguous and susceptible to more than one reasonable interpretation. I would interpret the policy provision differently. If there are ten material and substantial duties of an occupation and the employee can perform only six of those ten duties, then the employee is by definition “unable to perform all of the material and substantial duties” of the occupation. That too is a reasonable interpretation. The ambiguity should be construed against the insurer. See Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir.1997). But to construe the policy differently than the administrator would create an internal inconsistency between the policy provisions for total disability and partial disability. Consequently, though I disagree with the majority’s interpretation of the policy, this issue is not outcome determinative.
However, I do respectfully dissent from the majority’s conclusion that when a plan administrator initially determines that a covered employee is eligible for benefits and later determines that the employee is not eligible for those benefits, the plan administrator may terminate benefits without demonstrating that its initial decision was erroneous, or without substantial evidence of a change in the claimant’s medical condition.
Because this case involves an insurer who is also the plan administrator, producing a direct conflict of interest on the part of the administrator, we apply a sliding-scale standard of deference to the administrator’s decision. See Vega v. Nat’l Life Insur. Servs., 188 F.3d 287, 294-99 (5th Cir.1999). Under such circumstances, this court still applies the abuse of discretion standard, “but gives less deference to the administrator in proportion to the administrator’s apparent conflict.” Id. at 296. Where there is a conflicted administrator, “the administrator has a financial incentive to deny the claim and often can find a reason to do so.” Id. The court must “focus on whether the record adequately supports the administrator’s decision.” Id. at 298. “[W]e are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator’s decision.” Id. at 299.
At the summary judgment stage, it is the movant who has the burden of showing that there is no genuine issue of material fact. The parties agree that this claim involves a policy of insurance issued by *279 Liberty. Liberty is the administrator. All reasonable inferences are to be drawn in favor of Ellis. If Liberty pays a claim it is not unreasonable to infer that every penny of the claim comes directly out of Liberty’s coffers. Any argument that the administrator did not have a direct and total, or almost total conflict of interest in this situation is to ignore reality. The fox guarding the chicken house is not entitled to great deference.[1] Thus, in analyzing the administrator’s decision to terminate benefits, I would give little deference to the administrator’s exercise of discretion.
It is undisputed that the administrator initially determined that Ellis was entitled to disability benefits based on the medical evidence, and later reaffirmed that fact in the letter of termination. I would hold as a matter of law, that once the administrator determined Ellis was entitled to disability benefits, a subsequent termination of those benefits would be an “arbitrary and capricious” decision by the administrator, and hence an abuse of discretion, unless there is substantial evidence to support either (1) that the initial decision to grant benefits was incorrect; or (2) that there has been a change in condition that would justify the termination of benefits. Once the administrator has exercised its discretion and determined that a claimant is entitled to benefits, a later decision to terminate those vested disability benefits without justification is by definition arbitrary and capricious and an abuse of discretion. See Meditrust Financial Servs. v. Sterling Chemicals, 168 F.3d 211, 215 (5th Cir.1999) (holding that administrator’s decision is arbitrary if made without rational connection between known facts and the decision or between found facts and the evidence).
In the termination letter of December 22, 2000, the administrator acknowledged that “it is apparent” that Ellis “met the criteria for [her] policy’s definition of disability initially.” Thus, in the opinion of the administrator the initial decision to grant disability benefits was correct. The administrator made no effort to show that the initial decision was wrong, but to the contrary, reaffirmed the initial determination. The question then becomes whether there was a change in condition that would justify the later termination of benefits. The majority opinion fails to answer this question.
In the termination letter, the administrator listed (with little explanation of its relevance) the medical evidence used in support of the decision to terminate benefits. The district court analyzed this evidence and found that it did not support the administrator’s conclusion to terminate benefits. I agree. I. would affirm the district court for basically the same reasons given in the district court’s opinion. The record does not adequately support the administrator’s decision to terminate benefits because the administrator admitted that the plaintiff was not initially disabled and because there was no substantial evidence of a subsequent change in condition. Thus, the administrator abused its discretion.
The majority contends that the dissent argues that a plan administrator cannot *280 reverse an initial erroneous decision to pay benefits. Contrary to the majority’s characterization, I certainly would agree that an insurer can correct an erroneous initial decision to pay benefits, but only if there is substantial evidence to support that decision. But in this case the administrator, Liberty, acknowledged, even in its letter of termination, that the initial determination to award benefits was appropriate.
For the above reasons, I respectfully dissent.

. The majority in a footnote contends that MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 479 n. 8 (5th Cir.2003), demonstrates that there should be no ipso facto presumption of a conflict. No such presumption is required. The parties admit to the conflict. As this court stated in MacLachlan:
this court’s decisions, following Vega, that have found an apparent conflict of interest are ones in which a claim was denied by the insurance company that did not employ the claimant, but instead was contractually obligated to make payments under the employer's plan.... This is a significant distinction. ...
Id. at 479 n. 8. This is precisely the factual situation in this case.