# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-30473
Summary Calendar

ARTHUR CROSS, also known as Skip Cross

Plaintiff-Appellant

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY; DIVERSIFIED
FOODS AND SEASONINGS INC

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-3507

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Arthur Cross appeals the district court's grant of summary judgment in favor of Defendants-Appellees Reliance Standard Life Insurance Company ("Reliance") and Diversified Foods and Seasonings, Inc. ("Diversified") on Cross's claim for wrongful denial of disability benefits. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 07-30473

## I. FACTS AND PROCEEDINGS

Cross was hired by Diversified as Director of National Account Sales on January 1, 2001. As of April 1, 2001, Cross was insured under Diversified's Long-Term Disability Plan ("Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. To receive benefits under the terms of the Plan for the first twenty-four months of the claim, a claimant must be found to be totally disabled, which means that he cannot perform the material duties of his regular occupation. The claimant must be totally disabled throughout the elimination period of ninety days from the first date of total disability.

Cross had an aortic valve abnormality which first required surgery in 1984, and afterwards he occasionally experienced cardiac symptoms and underwent additional catheterization and stenting procedures. On April 3, 2002, Carlos Sotolongo, Cross's physician, indicated that Cross was never expected to return to full or part-time work. On February 24, 2003, Cross underwent a left internal mammary artery implant. On February 4, 2004, he took a stress test which showed normal blood pressure response and a borderline abnormal baseline electrocardiogram. The test was clinically positive for ischemia[1] but electrocardiographically negative for it. Cross underwent a second stress test on March 4, 2004, in which he achieved ninety percent of his maximum predicted heart rate. He also achieved 9.4 METS.[2] The test also indicated that he was

---

[1] "Local anemia due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood supply." STEDMANS MEDICAL DICTIONARY 211420 (27th ed. 2000).

[2] Metabolic equivalents are "used to estimate the oxygen cost of activity . . . [and] more than 9 METS [indicates] heavy work." STEDMANS MEDICAL DICTIONARY 136370 (27th ed. 2000).

clinically borderline positive for myocardial[3] ischemia versus deconditioning and electrocardiographically borderline positive. On June 7, 2004, he visited cardiologist Barry Kusnick, his last doctor visit before his June 25, 2004 stated disability date. He complained of fatigue, dyspnea[4] on walking from his front door to the car, insomnia, and severe work-related stress. Kusnick's notes from the visit indicate that Cross "appear[ed] distraught" and indicated "severe . . . work stress. Up against a very adversarial supervisor."

Beginning on April 21, 2004 and continuing through June 7, 2004, Cross sent resumes to several employers and contacts, seeking a sales or sales manager position. On June 22, 2004, three days before his stated disability date and one day before the disability letter issued by his doctor, Cross sent one final resume to a prospective employer.

In a letter dated June 23, 2004, Kusnick informed Reliance that Cross was permanently disabled effective immediately, noting Cross's extensive medical history. Cross's claimed disability date was June 25, 2004 and his elimination period ran through September 23, 2004. On July 26, 2004, when first visiting Kusnick after his disability date, Cross told him that he had walked 1.5 miles in thirty-five minutes.

Reliance requested a review of Cross's medical records by nurse Dorothy McGarry which was conducted on August 25, 2004. She concluded that Cross was "capable of sedentary restrictions and limitations" which would have to be permanent. Reliance then requested a review by cardiologist Marvin Goldstein

---

[3] The myocardium is "[t]he middle layer of the heart, consisting of cardiac muscle." STEDMANS MEDICAL DICTIONARY 265340 (27th ed. 2000).

[4] "Shortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs." STEDMANS MEDICAL DICTIONARY 122310 (27th ed. 2000).

who evaluated Cross's records and the March 2004 stress test and concluded that Cross should be able to perform a light duty occupation. He saw no change in Cross's cardiac condition on or around June 2004, when the disability was to have occurred. On September 24, 2004, Reliance denied Cross's application for long-term disability benefits.

After claiming disability, Cross moved to North Carolina. There, on December 7, 2004, he saw cardiologist Richard Jacoby, his first doctor's visit since his July 26, 2004 appointment with Kusnick. After a March 3, 2005 office visit, Jacoby wrote that Cross's functional limitations, largely based upon Cross's reports of dyspnea on completing daily activities, "would make meaningful employment difficult."

Cross requested a review of his medical records by another doctor, William Porter, who practiced in internal medicine, hematology, and oncology. Porter indicated that a January 5, 2005 stress test was normal but still noted Cross's significant dyspnea and concluded that he was disabled for any occupation as continued employment would pose considerable medical risk to him. On March 10, 2005, Cross made a declaration that his position with Diversified was not sedentary and involved significant activity. He also noted the considerable stress of his position and his supervisor's relentless expectations. He, however, added that the stress level would be similar at other companies.

At Reliance's request, Jeffrey Caren, a cardiologist, reviewed Cross's records from Sotolongo, Kusnick, Goldstein, Jacoby, Porter, Cross's declaration, the 2004 stress tests, and additional reports from December 2004. Caren concluded that Cross was capable of working at a light occupation.

Following an administrative appeal, Reliance made a final determination that Cross was not entitled to disability benefits under the Plan. Reliance noted,

4

"Dr. Jacoby documents that Mr. Cross's reported functional limitations would make 'meaningful employment difficult.'" It also observed that Kusnick indicated that Cross was at "maximum medical rehabilitative state," even though he had not participated in a cardiac rehabilitation program after his bypass surgery which had been recommended by Kusnick. In response to Porter's concerns about job-related stress, Reliance noted that Cross's blood pressure remained constant from before stopping to work to nine months after stopping work.

Reliance observed that the Plan provided benefits if Cross was unable to perform the material duties of his occupation, not his job which it defined as "a set of specific tasks performed for a specific employer." It concluded that Cross's stress associated with his adversarial supervisor was a specific job circumstance, but did not preclude him from performing his occupation. Reliance pointed to Cross's attempts to find similar jobs up until he claimed disability. It also noted that Cross did not consult with his cardiologist between January 21, 2004 and June 7, 2004. However, Cross emailed his resume for a sales and management position on the evening after the June 7, 2004 doctor visit. He sent his last resume on June 22, 2004, the day before Kusnick sent a letter in support of Cross's disability.

Cross commenced this action on July 6, 2006. After both parties filed motions for summary judgment, the district court granted Reliance's motion on April 20, 2007. Cross appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo the district court's decision that a plan administrator did not abuse its discretion in denying disability benefits. Barhan

v. Ry-Ron Inc., 121 F.3d 198, 201 (5th Cir. 1997). Because the terms of the Plan give the plan administrator discretionary authority to determine benefits, the district court reviews the denial of benefits for abuse of discretion. Id. "[I]f the administrator's decision on eligibility is supported by substantial evidence and is not erroneous as a matter of law, it will be upheld." Id. However, because Reliance acts as both the insurer and the plan administrator, it operates under a conflict of interest because it "potentially benefits from every denied claim." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 295 (5th Cir. 1999). This Court therefore applies a "sliding scale standard" and grants Reliance's decision "less than full deference." Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001). "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Vega, 188 F.3d at 297. However, "our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." Id.

## III. DISCUSSION

Cross primarily claims that the stress of his occupation exacerbated his heart condition. He argues that Reliance's actions or inaction in evaluating his claim evidences a conflict of interest and that, therefore, we should accord its decision less deference. He concurrently points to Reliance's actions or inaction to indicate that its decision to deny him benefits was arbitrary and capricious. Cross concedes that he could have physically performed the requirements of his job on the day after he retired. He does not challenge Reliance's interpretation of the Plan that he had to be disabled from performing the material duties of his

occupation, not his specific job, to qualify for benefits. He also concedes in his reply brief that a plan administrator's decision is not necessarily arbitrary and capricious because it accepts the decisions of its physicians conducting a review of records over the claimant's treating physicians. See Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601–03 (5th Cir. 1994).

Contrary to Cross's argument, the administrative record does not show a strong conflict of interest necessitating a less deferential review, nor does it show that Reliance was arbitrary and capricious in deciding Cross's claim. First, it was reasonable for Reliance to rely on Goldstein's opinion over that of McGarry's and Kusnick's. It was not arbitrary for Reliance to accept the opinion of a cardiologist over that of a nurse, McGarry. Moreover, Goldstein's opinion was based on the March 2004 stress test which was the test closest in time to Cross's claimed disability date. Goldstein relied on the best stress test available which gave objective indications of how Cross's body would react to stress. Cross concedes in his reply brief that he was factually incorrect in his original brief in asserting that Goldstein was not provided with the previous opinions of Sotolongo and Kusnick. Goldstein considered those records when making his determination.

Although Cross claims there were several flaws in Goldstein's conclusions, we are not persuaded. He suggests that Goldstein's reliance on the March 2004 test was in error because it was performed approximately four months before the disability date. This argument does not support Cross's disability claim, because, if the most recent stress test was unreliable, then Kusnick had few, if any, objective bases for his conclusion that Cross became disabled on June 23, 2004. It is also difficult for Cross to argue that Goldstein's reliance on the test was misplaced because his doctors did not have him take another stress test for

several months. Cross further claims that Goldstein erred in relying on the March 2004 test because his condition was deteriorating. However, the objective tests taken before and after his disability date indicate no such deterioration. Cross also argues that Goldstein erred in relying on an approximation of his walking speed to determine that he was capable of light work, but a review of Goldstein's report shows that he relied on objective data from the stress test for that particular determination. Furthermore, considering that Cross had reported the numbers used to determine his mile per hour walking rate a month after his disability date, neither Goldstein nor Reliance were unreasonable in approximating his walking speed.

Second, Reliance's acceptance of Caren's conclusion over Jacoby's and Porter's was also reasonable. Caren reviewed the records from the other physicians, the results of the 2004 stress tests, Cross's declaration, and additional tests from December 2004. His conclusions were based on the objective evidence available in those records. On the other hand, Jacoby's opinion that meaningful employment would be difficult was based upon Cross's reported ailments months after his elimination period ended. Porter's conclusions had a similar basis. However, Porter also indicated that the objective data from a January 7, 2005 exercise test "showed a normal ejection fraction and no wall abnormalities." Because of the objective criteria used, Reliance reasonably accepted Caren's conclusions over Jacoby's and Porter's. Nor does its acceptance of Caren's opinion indicate a conflict of interest.

Furthermore, the record does not indicate that Reliance had a conflict of interest or was arbitrary and capricious in its evaluation of Cross's job stress. Goldstein's opinion was based upon stress tests that provided objective criteria to evaluate Cross's cardiac health. Cross's blood pressure remained constant

from the periods before and after his disability date, indicating that job stress was not a factor in Cross's condition. Even if it were, the administrative record shows that the stress of which Cross complained was the result of his specific job, not his occupation. First, on June 7, 2004, Kusnick noted Cross's complaints about his adversarial relationship with his supervisor as a cause of his severe work stress. Second, Cross's own actions in seeking the same occupation in Florida at approximately the same time he applied for disability benefits, indicates that the stress that he claims was dangerously deleterious to his health was associated with his job at Diversified, not his occupation as a sales manager. While Cross speculated that such stress would occur in any sales manager position, his own actions indicate otherwise.

Cross specifically asks this Court to decide whether an insured's contemplation of working for another employer against medical advice would defeat an otherwise valid disability claim. We hold that, based upon the facts of this case, Reliance was reasonable and exhibited no conflict of interest in considering Cross's actions in determining the validity of his claim. As Cross was the source of much of the bases for his doctors' opinions, the seriousness with which he took their advice was relevant in determining the validity of their conclusions. Cross's actions were also relevant in determining whether it was his job at Diversified or his occupation that was the cause of the stress he claimed to be harmful to him.

Cross also asks this Court to consider whether an insured is disabled if his occupation is "dangerously deleterious to his health" but could otherwise perform the work. We need not decide that question. Reliance did not conclude as a factual matter that Cross's occupation was dangerously deleterious to his health,

9

and this Court holds that Reliance's conclusions were reasonable and not the result of a conflict of interest.

## IV.  CONCLUSION

The judgment of the district court is AFFIRMED.