OPINION
 

 DAVIDSON, Chief Judge.
 

 On May 8, 2002, the Plaintiff instituted this action against the Defendant, asserting a claim for bad faith denial of benefits in connection with an accidental life insurance policy. The Court conducted a bench trial of this matter on February 9, 2004.
 

 Having carefully considered the argument and exhibits presented at trial along with the parties’ submissions, the Court finds that the Plaintiff has failed to establish that the plan administrator abused her discretion in denying death benefits. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court issues the following findings of fact and conclusions of law.
 

 A. Factual Background
 

 This action, originally filed in the Circuit Court of Attala County, Mississippi, was removed by the Defendant under the authority of 28 U.S.C. § 1332(a)(1). The Defendant asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and (b) there is diversity of citizenship between the Plaintiff and Defendant.
 

 This dispute arises from a tragic accident which claimed the life of Terry Gil-mer. At the time of the accident, Gilmer was driving a transport truck for his employer, Nolen Sistrunk, Inc. The record indicates that Gilmer was traveling east in the left lane of Interstate 20 in the State of Louisiana. Apparently, for reasons unknown, Gilmer swerved into the left rear end of another truck also traveling east but in the right lane. The accident resulted in the death of Gilmer.
 

 In the beginning of his employment, Gil-mer was offered and accepted accidental death insurance benefits through PFL Life Insurance Company. The policy provided that if Gilmer were killed in an “accident” the beneficiary would receive $1,000 per month guaranteed for twenty years. Gil-mer named his daughter, Dawn Brown, as the sole beneficiary of the policy. The policy defined an accident as an “insured’s death resulted directly from accidental bodily injury and independently of disease or bodily infirmity or any other cause.” The policy excluded from coverage death that “results, directly or indirectly, from any of the following causes or is contributed to, wholly or in part, by ... disease.”
 

 Subsequent to the incident, Brown, the Plaintiff herein, obviously filed a claim for the policy proceeds. The Defendant ulti
 
 *CMVII
 
 mately denied the claim based upon the plan administrator’s finding that the accident had been, at least, in part attributable to a disease. Specifically, the administrator found that Gilmer had suffered a myocardial infarction or heart attack that caused the accident which claimed his life. The Plaintiff filed this action alleging bad faith denial of benefits.
 

 B. Standard for Review
 

 The Employee Retirement Income Security Program provides district courts with the authority to review an administrator’s denial of plan benefits. 29 U.S.C. § 1132(a)(1)(B). The administrator’s factual findings are reviewed for an abuse of discretion.
 
 Pierre v. Conn. Gen. Life Ins. Co.,
 
 932 F.2d 1552, 1562 (5th Cir.1991) (adopting an abuse of discretion standard for review of an administrator’s factual determinations). Additionally, if the plan vests the administrator with discretionary authority to construe terms of the plan, the denial of benefits is also reviewed for an abuse of discretion.
 
 Gosselink v. AT & T, Inc.,
 
 272 F.3d 722, 726 (5th Cir.2001). An administrator is said to have abused his discretion when he has acted arbitrarily and capriciously.
 
 Lain v. UNUM Life Ins. Co. of Am.,
 
 279 F.3d 337, 342 (5th Cir.2002). A decision is arbitrary if made without a “rational connection between the known facts and decision or between the found facts and the evidence.”
 
 Bellaire Gen. Hosp. v. Blue Cross Blue Shield,
 
 97 F.3d 822, 828 (5th Cir.1996). An administrator’s denial of benefits must be “based on evidence, even if disputable, that clearly supports the basis for its denial.”
 
 Vega v. Nat'l Life Ins. Serv., Inc.,
 
 188 F.3d 287, 299 (5th Cir.1999). There must be some “concrete evidence” in the record to support the denial or the administrator has abused his discretion.
 
 Id.
 
 at 302.
 

 In reviewing the decision, the court is bound by the evidence that was available to the administrator.
 
 Thibodeaux v. Cont’l Cas. Ins. Co.,
 
 138 F.3d 593, 595 (5th Cir.1998). As a result, the court’s only inquiry is whether the “record adequately supports the administrator’s decision.”
 
 Vega,
 
 188 F.3d at 298. Moreover, deference to the administrator’s decision is required and the court may not substitute its judgment for that of the plan administrator.
 
 Boswell v. Reliance Standare Life Ins. Co.,
 
 No. 03-60308, 83 Fed.Appx. 658, 660 (5th Cir. Dec.17, 2003);
 
 Schadler v. Anthem Life Ins. Co.,
 
 147 F.3d 388, 395 (5th Cir.1998). However, in the event that the administrator is self interested less deference is required.
 
 Vega,
 
 188 F.3d at 298, 302. That is to say, where “the administrator has a financial incentive to deny the claim and often can find a reason to do so,” there is a conflict of interest.
 
 Id.
 
 at 296. When such a case presents itself, the Court is to apply a “sliding scale standard to the review of [an] administrator’s decision.”
 
 Id.
 
 at 298.
 

 C. Discussion
 

 In the case
 
 sub judice,
 
 the administrator was also the Defendant insurance company that issued the accidental death policy. Naturally, the administrator may have had financial incentive to deny the Plaintiffs claim. Therefore, the Court acknowledges that the administrator’s decision will be afforded the appropriate deference.
 

 As mentioned earlier, the accidental death policy limited the disbursement of benefits to “accidents” not in any part attributable to disease. The administrator denied the Plaintiffs claim based upon the finding that the deceased suffered a cardiac event while driving which caused the subsequent collision. The Plaintiff does not dispute the administrator’s interpretation of the policy as it prohibits coverage for a “disease” and that a myocardial infarction is, in fact, a disease. Rather, the Plaintiff takes issue with the amount and
 
 *CMVIII
 
 type of evidence relied upon by the administrator. Specifically, the Plaintiff focuses on statements made by Dr. Dawn Young who performed the autopsy. The Plaintiff argues that the administrator’s decision was arbitrary because Dr. Young was only willing to say that the heart attack “may have caused” the collision. The premise continues, that this language does not support the conclusion that the heart attack “more probably than not” caused the incident.
 

 At the time the administrator determined that the policy did not cover Gil-mer’s death, she relied upon essentially four pieces of documentary evidence. First, the autopsy report revealed,
 
 inter alia,
 
 that the deceased was suffering from “[a]cute and ongoing myocardial infarction” which “may have caused the accident.” Second, the Certificate of Death issued by the State of Louisiana echoed this language in a section entitled “other significant [conditions] contributing to death.”
 
 [1]
 
 Third, the Defendant places much reliance upon the investigating officer’s report and subsequent interview in which he stated that there was no reason for the collision other than a medical event. Finally, medical records retrieved from the deceased’s physician showed that Gilmer was being treated for high blood pressure which was “poorly controlled.” The Court will review each document in turn along with the corresponding interviews in order to determine if there was concrete evidence to adequately support the Defendant’s denial of benefits.
 

 The autopsy report is, perhaps, the most significant piece of evidence.
 
 [2]
 
 The report has a paragraph titled “narrative of findings” in which Dr. Young provided these comments,
 

 [t]his subject’s death was due to multiple traumatic injuries received as the driver of a vehicle involved in a two-vehicle accident. He sustained severe closed-chest and abdominal injuries. There was no evidence of recent abuse of ethanol or the other common drugs. He had
 
 ongoing myocardial infarction,
 
 with
 
 recent thrombosis
 
 of the left coronary artery.
 
 This may have caused the accident.
 

 (emphasis added). Under a subheading titled “secondary series” the doctor noted that the coronary arteries contained blockage described as “severe in all three major branches, with 60-70% occlusion.” After reviewing the autopsy report the administrator, or her agent, contacted Dr. Young for additional comments and explanation of her findings. Dr. Young was questioned about her “narrative findings” and offered “that at the time of the insured’s death he was having a heart attack and was having it for ‘sometime.’ ” Dr. Young further estimated that the heart attack was less than six hours in age. The doctor was asked to elaborate on her finding that the myocardial infarction may have cause the deceased to lose control of the vehicle. In response, she referred to the police report and stated that “the facts of the case” appeared to support that the deceased’s vehicle swerved suddenly indicating that something “pretty sudden” had happened to the insured. The doctor felt that her findings were consistent with the police report’s description of the accident. Interestingly, when Dr. Young was asked directly whether it was “more probable than not that the insured’s heart condition was the cause of
 
 *CMIX
 
 the incident,” she stated that after eliminating all other possibilities that “it was definitely a possibility that the myocardial infarction caused the incident” but specifically refused to use any language stronger than “may have caused” the incident. The doctor was further questioned regarding the severity of the heart attack and stated that she could not determine whether, absent the injuries sustained from the collision, that the heart condition would have killed Gilmer. In the end, it is clear that the deceased suffered from an existing heart condition and also that, at least, on the day of the incident the deceased had a heart attack. Remaining unresolved is when the heart attack occurred.
 

 There is little information in the record concerning the death certificate. However, it is logical to assume that the certificate was prepared following and based upon the autopsy findings. As previously noted, the document echos the language contained in the autopsy report that “acute and ongoing myocardial infarction” was a significant factor contributing to Gilmer’s death.
 

 Next, the police report. In addition to describing the accident scene in great detail, the report recited statements taken from witnesses to the effect that the deceased “swerved” into the left rear side of another truck. The document further described the general circumstances of the incident including the absence of potential hazardous conditions such as weather, defects in the road, and poor visibility. In other words, there were no environmental or external conditions which would have contributed to or caused the collision. One of the investigating officers also interviewed the driver of the other truck, Zales-ka Bryant. Bryant’s statements shed little light upon the relevant events of that day but he stated that he saw Gilmer’s truck in his rear view mirror and that he did not see the exact position of Gilmer’s truck prior to the impact. However, Gilmer told the officer that the rear of his trailer was hit “very hard.”
 

 The supervising accident investigator, Lieutenant Fine, was later interviewed by the administrator or her agent. After having referred to the autopsy report, Fine definitively offered that “the insured had a cardiac event which caused the incident.” Fine was asked to explain how he arrived at this conclusion. He commented that the deceased’s truck struck the other vehicle’s left rear dual axles and that based upon his experience “there was no other explanation except that the insured had a medical event or, less likely, he feel asleep.” Fine suggested that a heart attack is the only conclusion possible “considering that they were on an open stretch of highway with good weather conditions and there were no other factors whatsoever to show that it was not a medical event.” The officer’s interview is summarized by the following excerpt,
 

 with professional drivers under good road conditions, there was no other conclusion except that the insured’s medical condition had caused him to veer into the Haliburton vehicle at the point of the dual rear axles, which caused the Hali-burton axle to break loose from the vehicle. Thus, due to the placement of the insured’s cab along the side of the Hali-burton vehicle near the rear dual axles, Lt. Fine stated that it would have been very improbable that the insured had not seen the Haliburton vehicle if he were merely just changing lanes.
 

 Finally, the administrator obtained and reviewed the deceased’s medical records. The documents reveal that the deceased had been diagnosed with hypertension and diabetes. The family physician also made several significant notes indicating that the deceased “poorly controlled” his hypertension and complained of shortness of breath and dizziness. At one point, the doctor
 
 *CMX
 
 recommended an EKG be performed but the deceased refused. The medical records also note that the fifty-one year old smoked approximately two packs of cigarettes a day.
 

 Under Mississippi law, the plaintiff, at all times, bears the burden of proving the right to recover under an insurance policy.
 
 So. Life & Health Ins. Co. v. Kemp,
 
 300 So.2d 782, 785 (Miss.1974). However, the defendant will shoulder the burden of proving any affirmative defenses.
 
 Commercial Union Ins. Co. v. Byrne,
 
 248 So.2d 777, 782 (Miss.1971). The Fifth Circuit discussed how these burdens of proof coexist and their relation to one another in
 
 Britt v. Travelers Ins. Co.,
 
 566 F.2d 1020, 1022-23, n. 3 (5th Cir.1978). The court was faced with the similar dilemma of trying to separate an accidental injury from a pre-existing infirmity to determine if the death was covered by an accidental death insurance policy.
 
 See, Britt v. Travelers Ins. Co.,
 
 556 F.2d 336, 338-40 (5th Cir.1977), for complete a factual recitation. On a petition for rehearing, the court offered an exemplary jury instruction to clarify the distinction between “cause” and “contribution.”
 
 Britt,
 
 566 F.2d at 1022-23, n. 3. In pertinent part the instruction read,
 

 [i]f the proof shows that [an accident] caused [the death], then you must make a second decision as to whether [the defendant] has proved by a preponderance of the evidence that bodily or mental infirmity contributed to [the death]. If the proof shows that bodily or mental infirmity contributed to [the death] from [an accident] then your verdict must be for [the defendant]. If you are not persuaded that bodily or mental infirmity contributed to [the death], then your verdict must be for [the plaintiff].
 

 Id.
 
 In other words, even if the death resulted directly from an accident, the death may, nevertheless, not be covered if in any way contributed to by a disease. “Where policies provide that an accident must ‘directly and independently’ be the cause of a loss, the general rule is that if disease is a concurrent proximate cause, the insurance company is not liable.”
 
 Sekel v. Aetna Life Ins. Co.,
 
 704 F.2d 1335, 1342 (5th Cir.1983). Further, the Fifth Circuit has announced that “[w]hen the facts are such that neither the accident nor the pre-exist-ing disease can be isolated as the proximate cause, and it is concluded that both combined or operated to produce the harm, the insurer is not liable.”
 
 Id.
 
 at 1342
 
 (quoting,
 
 Couch, § 41:75 at 113-14).
 

 In accordance with Mississippi law, the Plaintiff must prove her right to benefits under the accidental death insurance policy. The Plaintiff has offered no evidence, whatsoever, to contradict the administrator’s findings. Instead, the Plaintiff attacks the sufficiency of the evidence gathered. However, certainly the Plaintiff can not deny the proof that shows the deceased experienced a myocardial infarction contemporaneous with the wreck which claimed his life. Moreover, it is impossible with a perfect degree of certainty to determine exactly what caused the deceased to swerve into another vehicle. It is likewise, impossible to chronologically isolate the heart attack from the fatal incident. As the Fifth Circuit commands, when a covered and non-covered event operate to produce the harm the insurer is not liable.
 
 Sekel,
 
 704 F.2d at 1342. Nevertheless, the Court need not weigh evidence or determine by a preponderance of the evidence that the heart attack caused the wreck. Rather, the Court need only determine that there is a rational connection between the known facts and the decision reached.
 

 Additionally, although Dr. Young refused to use legalese to substantiate the Defendant’s denial of coverage, this does not in and of itself render the administra
 
 *CMXI
 
 tor’s decision arbitrary. After reviewing the record for concrete evidence, the Court finds that there is sufficient proof which could be reasonably relied upon to find that disease contributed to the death. Of greatest significance is the autopsy findings that the deceased had experienced an “acute and ongoing myocardial infarction.” The doctor declined to state with any degree of specificity that this caused the accident. However, it is undeniable that such a condition could have logically contributed to Gilmer’s death. Furthermore, as the accident investigator so aptly stated, in the absence of any other explanation for Gilmer, a professional truck driver with medical symptoms and habits indicative of heart disease, suddenly swerving into another truck that would have been in plain view on a clear day, a heart attack is a reasonable conclusion. It would be difficult to envision an experienced truck driver attempting to change lanes with another large truck clearly in his field of vision.
 

 Also, it has been suggested that perhaps Gilmer feel asleep at the wheel. In light of the statements taken from Gilmer’s employer, this seems the least likely explanation for the crash. The notes from the administrator’s file indicate that Gilmer had spoken with his employer between five and six o’clock in the evening the day before the incident. The employer stated that Gilmer was going to sleep and that he, Gilmer, should have “woken up fresh Monday morning.”
 

 While the precise events of that day will likely never be known, reasonable conclusions can be gleaned from the surrounding circumstances and evidence gathered. Though the Court may not have reached the same decision, it is not permitted to substitute its judgment for that of the administrator.
 
 Bosivell,
 
 83 Fed.Appx. at 660. Rather, the Court “need only assure that the administrator’s decision fall somewhere on a continuum of reasonableness-even if on the low end.”
 
 Vega,
 
 188 F.3d 287. Consequently, based on the discussion
 
 supra
 
 and particularly in light of the burdens of proof necessary to recover insurance benefits and the corroborating evidence, the Court finds that the administrator’s decision is supported by substantial evidence and the denial of benefits was neither arbitrary nor capricious.
 

 D. Conclusion
 

 For the above reasons, the Court holds that the Plaintiff has failed to demonstrate that the Defendant’s decision to deny accidental death benefits was an abuse of discretion. Hence, the Court rules in favor of the Defendant.
 

 A separate judgment in accordance with this opinion shall issue this day.
 

 JUDGMENT
 

 After a bench trial and pursuant to an opinion issued this day, the Court rules that
 

 (1) JUDGMENT is hereby RENDERED in favor of the Defendant PFL Life Insurance Company; and
 

 (2) this case is CLOSED.
 

 [1]
 

 . Repeated duplication has resulted in a deleterious replica. The Court is unable to clearly discern the third word and inserts the word "conditions,” as it is clear that the intent is to describe other factors contributing to death.
 

 [2]
 

 . Although the autopsy was signed by the deputy coroner, Dr. Dawn Young actually performed the examination.