Isabele J. CARROLL

v.

**UNITED OF OMAHA LIFE INSURANCE CO., et al.**

No. CIV.A. 03–0569.

United States District Court, E.D. Louisiana.

June 17, 2005.

Vincent James Booth, Booth & Booth, New Orleans, LA, Townsend M. Myers, Townsend M. Myers, New Orleans, LA, for Isabele J Carroll, Plaintiff.

Thomas Edward Loehn, Boggs, Loehn & Rodrigue, for United of Omaha Life Insurance Company, defendant.

Virginia N. Roddy, Preaus, Roddy & Associates, LLP, New Orleans, LA, Aaron A. Clark, McGrath, North, Mullin & Kratz, PC LLO, Omaha, NE, Jennifer M. Lawrence, Preaus, Roddy & Associates, LLP, New Orleans, LA, for ConAgra Foods Inc., defendant.

## ORDER AND REASONS

LEMMON, District Judge.

**IT IS ORDERED** that defendant ConAgra Foods, Inc.'s motion for summary judgment (Document 34) is **GRANTED**.

Defendant United of Omaha Life Insurance Company's motion *in limine* and motion for summary judgment (Documents 38 and 43) are **DENIED**.

Plaintiff Isabele J. Carroll's motion for summary judgment (Document 45) is **GRANTED**.

The court finds that United of Omaha abused its discretion in calculating the benefits due to Jimmy A. Carroll's beneficiary under ConAgra's ERISA basic benefits coverage, and the policy is ambiguous on the calculation of supplemental benefits. The benefits due are $117,000.00 in basic benefits, and $175,000.00 in supplemental benefits, plus interest, less a credit to United of Omaha for $142,000.00 previously paid. Additionally, plaintiff's request for attorney's fees is **GRANTED**, and this case is referred to the magistrate judge for a determination of the appropriate amount of fees to be awarded.

### A. Background.

Effective January 1, 2000, defendant ConAgra established an ERISA benefits plan for its employees, which plan was insured by United of Omaha. The Summary Plan Description (SPD), in a section entitled "Highlights of Plan Details," states the following with regard to the plan's life insurance benefits:

> *Basic Life Insurance Benefit* Death benefit equal to two times your annual base salary (rounded up to the next $1,000) paid to your beneficiary; minimum $50,0000 up to a maximum of $1,000,000
>
> *Supplemental Life Insurance Benefit* Death benefit equal to

one, two or three times your annual salary plus prior year's commissions and incentives (rounded up to the next $1,000) paid to your beneficiary, up to a maximum of $1,000,000. The guaranteed issue amount is $500,000.[1]

These benefits were also explained later in the SPD:

*Life Insurance For You*

The company provides you with Basic Life Insurance equal to two times your annual base salary at no cost to you, up to a maximum benefit of $1,000,000. To determine the benefit amount, multiply your base salary by two and round that amount up to the next higher $1,000. Regardless of the amount of your salary, the minimum benefit amount is $50,000. See the *Glossary of Terms* for the definition of *base salary*. Your benefit adjusts automatically as your salary changes.

For additional term life insurance protection, you may purchase **Supplemental Life Insurance** equal to one, two or three times your salary (which includes your current base salary plus the prior calendar year's commissions and incentives, if any) up to the guarantee issue limit of $500,000. You must provide proof of good health to purchase life insurance under the circumstances listed below.

△ Your Supplemental Life benefit amount exceeds $500,000

△ You increase your coverage amount more than one level during the annual enrollment period.

Your maximum supplemental life insurance cannot exceed $1,000,000. To determine the benefit amount, multiply your base salary (and the prior year's commissions and incentives) by one, two or three depending on the level you select and round that amount up to the next higher $1,000. The premiums you pay are based on your age and are deducted from your pay on an **after-tax** basis. As with Basic Life Insurance, your Supplemental Life benefit adjusts automatically as your salary changes.[2]

Additionally, the SPD's "Glossary of Terms" provides:

**Base salary** is your annual pay. For commissioned employees, salary equals base salary plus commissions and incentives for the previous calendar year. For commissioned employees with less than one year of service, the life insurance benefit is $50,000. For hourly employees, *base salary* equals the hourly rate times the number of hours per week worked, or 2,080 hours per year. When determining Basic Life and Basic AD & D benefits, base salary equals your annual pay. When determining Supplemental Life and Supplemental AD & D benefits, base salary equals your annual pay plus commissions and incentives for the prior year.[3]

Decedent Jimmy A. Carroll was a ConAgra employee since 1989. Prior to October 2001, Carroll's compensation from ConAgra consisted of a $58,000.00 annual salary. Beginning on October 1, 2001, ConAgra changed the manner in which certain of its employees were compensated, and Carroll began to receive an annual salary of $19,278.00, plus a 13% commission on his sales. During the 2001 calendar year,

---

1. *See* ConAgra LIFE Plan Summary Plan Description at p. 2.

2. *Id.* at p. 7.

3. *Id.* at p. 18.

Carroll received $11,292.86 in bonuses and commissions, and $46,833.20 in salary, or a total of $58,126.06.[4]

Carroll died on March 6, 2002. On May 1, 2002, Toni Fetter at United of Omaha initially calculated the amount of Carroll's basic life insurance benefits as $39,000.00 by multiplying Carroll's "annual salary on last date at work" by two ($19,278.00 X 2 = $38,556.00, rounded up to $39,000.00). Fetter calculated the amount of supplemental benefits as $92,000.00, reaching this figure by multiplying Carroll's salary at date of death, plus his 2001 commissions, by three ($19,278.00 + 11,292.86 = $30,577.86; $30,577.86 × 3 = $91,712.58, rounded up to $92,000.00). Later that day, Shirley Blaney, a ConAgra employee, instructed Fetter that "the Basic Minimum amount is $50,000.00. That is the difference of $11,000.00 that you are stating for the difference." United of Omaha therefore calculated Carroll's total benefit to be $142,000.00, representing $50,000.00 due as the basic benefit and $92,000.00 due as the supplemental benefit. On May 3, 2002, United of Omaha issued two drafts totaling $142,000.00 to Mrs. Carroll.

Plaintiff argues that the amount of basic benefits should have been $116,252.12 (Carroll's total 2001 salary plus commissions and incentives X 2), and the amount of supplemental benefits should have been $174,378.18 (Carroll's 2001 salary plus commissions and incentives X 3), rounded up to a total of $292,000.00.

## B. Analysis.

### 1. United of Omaha's Motion *in Limine* (Document 38).

Relying on *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287 (5th Cir.1999) (*en banc*), United of Omaha argues that the court's analysis of whether the plan administrator acted properly is limited to consideration of the administrative record before the administrator, and that the court may not consider evidence outside of that record such as depositions. *Vega* explained:

A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before the plan administrator.

Our case law also makes clear that the plan administrator has the obligation to identify the evidence in the administrative record and that the claimant may then contest whether the record is complete. Once the administrative record has been determined, the district court may not stray from it except for certain limited exceptions. To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim. Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible. Likewise, evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim would be equally admissible. However, the district court is precluded from receiving evidence to resolve disputed material facts—*i.e.*, a fact the administrator relied on to resolve the merits of the claim itself.

*Id.* at 299 (citations omitted). The court also held "that the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair

---

4. The record is unclear precisely the amount Carroll earned from January 1, 2001 through September 30, 2001, and how much he earned from October 1, 2001 through December 30, 2001.

opportunity to consider it." *Id.* at 300. Under *Vega,* therefore, plaintiff may not introduce new facts demonstrating that the plan administrator's decision was incorrect.

■ Plaintiff has submitted the depositions of certain employees of ConAgra and United of Omaha, along with some of the discovery responses of these parties, to show that their interpretation of the plan was erroneous and constituted an abuse of their discretion. This is not new evidence to resolve a disputed fact forming the basis for the decision of the plan administrator, but instead is evidence regarding how the plan administrator interpreted the plan. *Vega* does not prohibit the court from considering this evidence.

### 2. Motion for summary judgment by ConAgra (Document 34).

ERISA provides that an employee benefit plan "may sue or be sued under this subchapter as an entity," and that money judgments against a plan are enforceable only against the plan:

> (2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against ·such person is established in his individual capacity under this subchapter.

29 U.S.C. § 1132(d). ConAgra argues that because no money judgment is enforceable against it under § 1132(d), it is not a proper party defendant.

Numerous courts have recognized that "there is a split in authority" concerning whether "the ERISA plan itself is the only proper party defendant on a claim pursuant to ERISA 502(a)(1)(B)." *Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1194 (8th Cir. 1998).[5] The Fifth Circuit analyzed this issue in *Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339 (5th Cir.2003), *cert. denied,* 540 U.S. 1110, 124 S.Ct. 1078, 157 L.Ed.2d 898 (2004). *Musmeci* involved a program instituted by Schwegmann supermarkets (SGSM) to provide vouchers for free groceries to certain of its retirees. The program was funded out of SGSM's general revenue. After SGSM experienced financial difficulties, its Chief Executive Officer, John Schwegmann, discontinued the voucher program, which he considered to be a "gratuity subject to termination at will." *Id.* at 343. The retirees that had been receiving vouchers then filed suit against, *inter alia,* SGSM, the SGSM Pension Plan, and SGSM's insurer, United States Fidelity & Guaranty Co. (USF & G), claiming the voucher plan was covered by ERISA. The court rejected USF & G's argument that the only proper defendant was the plan itself:

> USF & G contends that Section 502 limits the source of recovery to the amounts of the plan so that the pension plan itself is the only party properly named as a defendant.

> \*    \*    \*    \*    \*    \*

> While the language suggests that the plan is the only proper party defendant, other Circuits have allowed employees to maintain actions against their employers for the denial of benefits under facts similar to those in this case. These cases hold that the plan beneficiaries can sue the employer when it was the employer's decision to deny benefits and when the employer is the plan administrator or sponsor.

---

**5.** Section 502(a)(1)(B) is codified at 29 U.S.C. § 1132(a)(1)(B), and provides that a plan participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In this case, Plaintiffs named both the SGSM Pension Plan and SGSM as defendants in this lawsuit. SGSM is both the "plan administrator" and "plan sponsor." The SGSM Pension Plan has no meaningful existence separate from SGSM because the Voucher Plan is funded by the general assets of the partnership. Moreover, it was indisputably SGSM's decision to deny further vouchers or their cash equivalent to Plaintiffs. Under these facts, the district court correctly held that SGSM was properly named as a defendant.

*Id.* at 343 (citations omitted). In a later case addressing this issue, *Mello v. Sara Lee Corp.*, 292 F.Supp.2d 902 (N.D.Miss. 2003), the plaintiff was told by a Sara Lee Vice President that the date of his enrollment in the Sara Lee pension plan would be 1984, when he began working for a company that was later acquired by Sara Lee. For six years his retirement statements each showed 1984 as the starting date of his credited service. Sara Lee then suddenly changed his credited service date to 1994, the year plaintiff transferred to a different division in Sara Lee, and refused to give him credit for earlier service. The court held:

Given the striking similarities of the facts in the instant case and those of *Musmeci,* as well as the legal context of the [circuit] split, this Court concludes that upon appeal the Fifth Circuit would likely hold that the plaintiff properly joined Sara Lee Corporation, the plan administrator and sponsor—especially given Sara Lee's written and oral actions as plan administrator and sponsor are paramount to the plaintiff's claims.

*Id.* at 907.

■ The court finds that ConAgra is not a proper defendant to plaintiff's suit.

The language of ERISA indicates that the employer is not a proper defendant. *Musmeci* allowed a suit against an employer to proceed because it was the employer's decision to deny benefits. However, "[p]laintiff agrees" with ConAgra "that United of Omaha had the ultimate authority to determine eligibility for benefits, as well as the obligation to pay additional benefits if the Court determines them to be owed." [6] Because it was not ConAgra's final decision to determine Carroll's benefits, the case is distinguishable from *Musmeci,* ConAgra is not a proper party defendant, and its motion is granted.

2. **United of Omaha's motion for summary judgment (Document 43) and plaintiff's motion for summary judgment (Document 45).**

a. **Standard of Review.**

■ In reviewing an ERISA plan administrator's decision, a district court "must apply an abuse of discretion standard only when the Plan itself confers discretionary authority on the Trustees to interpret the Plan." *Branson v. Greyhound Lines, Inc. Amalgamated Council Retirement and Disability Plan,* 126 F.3d 747, 756 (5th Cir.1997), *cert. denied,* 523 U.S. 1047, 118 S.Ct. 1362, 140 L.Ed.2d 512 (1998). If the Plan does not give discretionary authority to the "administrator or fiduciary," a denial of benefits is reviewed under a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The SPD provides that the ConAgra Employee Benefits Committee, the "Plan Administrator," is the entity that "interprets and administers the plan." Additionally, it provides:

**6.** Document 54 at p. 3.

The life insurance plan is administered according to the provisions of Group Policies Basic Life: GLG—51A7; Supplemental Life: GLG –51A8 and Dependent Life, GLG–51A9, issued by:

United of Omaha Mutual Life Insurance Company

A rider attached to the United of Omaha policies provides:

## AUTHORITY TO INTERPRET POLICY

■ By purchasing the policy, the Policyholder grants United of Omaha Life Insurance Company the discretion and the final authority to construe and interpret the policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United. In making any decision, United may rely on the accuracy and completeness of any information furnished by the Policyholder or an insured person. United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

Because United of Omaha is a plan fiduciary with the "discretion and final authority" to interpret a ConAgra employee's "eligibility" for benefits and the amount of such benefits, the abuse of discretion standard applies. *Ellis v. Liberty Life Assurance Co.,* 394 F.3d 262, 266 n. 6 (5th Cir.), *petition for cert. filed* (April 13, 2005); *Chevron Chemical Co. v. Oil, Chemical and Atomic Workers Local Union 4–447,* 47 F.3d 139, 145 (5th Cir.1995).

### b. Was United of Omaha's decision an abuse of discretion?

The Fifth Circuit employs a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms. We first determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with the proper legal interpretation. If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. However, if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion.

*Vercher v. Alexander & Alexander, Inc.,* 379 F.3d 222, 227–28 (5th Cir.2004).

### 1) Was United of Omaha's plan interpretation legally correct?

In determining whether United of Omaha's plan interpretation was legally correct, the court must consider "(1) whether a uniform construction of the [plan] has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy." *Vercher,* 379 F.3d at 228; *Atteberry v. Memorial–Hermann Healthcare Systems,* 405 F.3d 344, 349 (5th Cir.2005).

### a) Basic benefit calculation.

■ For several years prior to 2001, Carroll received a salary from ConAgra. Beginning on October 1, 2001, a change in ConAgra's payment structure to its employees resulted in Carroll's compensation being changed to an annual salary of $19,278.00, plus a 13% commission on his sales, instead of his $58,000.00 salary.

The SPD provides, on page 2 in the "Plan Details" section, that the amount due as a "Basic Life Insurance Benefit" is "equal to **two times your annual base salary** (rounded up to the next $1,000)"

(emphasis added). Page 7, paragraph 2, provides in more expansive terms that the basic benefit is "equal to **two times your annual base salary** at no cost to you, up to a maximum benefit of $1,000,000. To determine the benefit amount, **multiply your base salary by two** and round that amount up to the next higher $1,000" (emphasis added). The glossary on page 18 provides:

> **Base salary** is your annual pay. For commissioned employees, salary equals base salary plus commissions and incentives for the previous calendar year. For commissioned employees with less than one year of service, the life insurance benefit is $50,000. For hourly employees, *base salary* equals the hourly rate times the number of hours per week worked, or 2,080 hours per year. (bold and italics in original)
>
> When determining Basic Life and Basic AD & D benefits, base salary equals your annual pay. When determining Supplemental Life and Supplemental AD & D benefits, base salary equals your annual pay plus commissions and incentives for the prior year.

Thus, the glossary defines "base salary" as "annual pay" and provides specifics for three classes of employees: (1) commissioned employees, whose salary equals "base salary plus commissions and incentives for the previous calendar year"; (2) commissioned employees with less than one year of service, for whom the life insurance benefit is $50,000.00; and (3) hourly employees, for whom the base salary is their hourly rate times the number of hours worked per week.

When Carroll's basic benefit was calculated by simply multiplying his current salary by two, apparently relying on the initial statement in the glossary that "Base salary is your annual pay" and interpreting annual pay to be only the salary portion of

Carroll's current income without considering his commissions. In doing so, the fact that Carroll's compensation was dependent upon both his salary and the commissions he earned, and the specific directive in the glossary that "salary equals base salary plus commissions and incentives for the previous calendar year," were ignored.

Defendants have taken various contradictory positions concerning whether Carroll was a "commissioned employee" under the SPD. Both Kara D'Ercole, ConAgra's Manager of Benefit Administration, and Diane L. Quinones, United of Omaha's Manager of the Group Life Claims Department, testified at their depositions that Carroll was not a commissioned employee. However, on October 8, 2002, the attorney for ConAgra wrote to counsel for Ms. Carroll and relied on the glossary's "commissioned employee" sentence in explaining how Carroll's benefits were calculated, but using the current rather than the prior calendar year's salary. ConAgra's attorney represented that the plan "provided that the amount of life insurance benefit is computed based upon 'base salary,'" quoted the glossary's "base salary" definition (boldfacing the first sentence relating to commissioned employees), and concluded:

> This definition clearly provides a methodology for computing base salary for commission employees. Under this definition, Mr. Carroll's "base salary" for computing the life insurance benefit was his base salary plus the previous calendar year commissions and incentives. **This is a standard provision necessitated by the lack of a full year's commissions and incentives in the year of death.** (emphasis supplied).

On October 22, 2002, Fetter asked Blaney to "confirm Jimmy Carroll's employee status at the time of his death. Was he an active salaried employee, a commissioned employee or an hourly employee?" Fetter

indicated in a handwritten note that Blaney's response was that "J. Carroll was a sales rep.—Was a salaried employee earning commission."

Additionally, D'Ercole testified that commissioned employees were those whose income was derived *solely* from commissions.[7] This interpretation is clearly inconsistent with the terms of the SPD because a commissioned employee would never have a base salary, just commissions. It would be nonsensical to define a commissioned employee's salary to "equal[ ] base salary plus commissions and incentives for the previous calendar year" if no commissioned employee had a base salary.

United of Omaha's interpretation of the SPD was not legally correct and directly contradicts the language of the SPD. The plain meaning of the SPD language mandates that Carroll's basic benefit under the SPD be calculated by multiplying his base salary plus commissions and incentives for the previous calendar year, or $46,833.20 + $11,292.26 X 2 = $116,252.12, rounded to $117,000.00. The use of only his base salary in determining his benefits is not fair and reasonable.

### b) Supplemental benefit calculation.

Carroll's supplemental benefits were calculated by multiplying Carroll's salary at date of death, plus his 2001 commissions, by three ($19,278.00 + 11,292.86 X 3 = $91,712.58, rounded up to $92,000.00).

The calculation of the supplemental benefit is explained in three contradictory ways in the SPD. In the "Plan Details" section on page two it is defined as being "one, two or three times your annual salary plus prior year's commissions and incentives" ($46,833.20 + $11,292.26 X 3 = $174,376.38, rounded up to $175,000.00). On page seven, paragraph 3, the SPD directs that the supplemental benefit is "equal to one, two or three times your salary (which includes your current base salary plus the prior calendar year's commissions and incentives, if any)" ($19,278.00 + 11,292.86 X 3 = $91,712.58, rounded up to $92,000.00). On page seven, paragraph 4, the SPD directs the multiplying of "your base salary (and the prior year's commissions and incentives) by one, two or three depending on the level you select" ($46,833.20 + $11,292.26 X 3 = $174,376.38, rounded up to $175,000.00). Thus, the SPD is ambiguous in defining the method of calculating the supplemental benefit. Considering the well established rule that "any ambiguities in the SPD must be resolved in the employee's favor,"[8] the court finds that the determination of supplemental benefits was not legally correct, and United of Omaha should have provided supplemental benefits by using Carroll's "base salary plus commissions and incentives for the previous calendar year," namely 2001, or $46,833.20 + $11,292.26 X 3 = $174,376.38, rounded to $175,000.00.

The plan administrator's decision was not a fair and reasonable interpretation of

---

7.  D'Ercole testified at her deposition:
    Q: So you're saying that someone that gets a base salary and commission is not a commissioned employee?
    A: Correct.
    Q: And you rely upon the SPD to reach that conclusion?
    A: No, I rely on that because I know there's employees out there that do not make a base salary, they are only paid on commission.
    Q: And that is a commissioned employee?
    A: Correct.
    D'Ercole deposition at 12.

8.  *McCall v. Burlington Northern/Santa Fe Co.,* 237 F.3d 506, 512 (5th Cir.2000).

the plan. There is no indication that by changing the income structure from straight salary to salary plus commission ConAgra intended to reduce life insurance benefits of their employees. It is clear that the change was to give ConAgra employees the opportunity to earn more money. Under United of Omaha's interpretation, some of the employees who died between the change in payment structure and the passing of one full calendar year of commissions would have their benefits substantially reduced. There is no evidence that the company intended these select employees to be adversely impacted by their change in payment structure, or that they intended such a non-uniform payment of benefits. The premiums were assuredly calculated on the reduced salary plus commissions for an entire year, and not on only a three month period. There is no indication that the change of life insurance benefits was made to effect what happened here. The plan administrator's decision resulted in a non-uniform interpretation of the plan that provided United of Omaha with an unexpected windfall.

### 2) Was there an abuse of discretion?

Although many cases employ the two-step analysis set forth in *Vercher*, the Fifth Circuit has sometimes dispensed with it if the "administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language." *Gosselink v. American Telephone & Telegraph, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001). In such a case, "the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations." *Id.*

■ The court finds that United of Omaha abused its discretion in calculating Carroll's benefits. The manner in which United of Omaha interpreted the basic benefits directly contradicts the plain meaning of the plan language. The plan is internally inconsistent and ambiguous in its designation of the manner of calculating supplemental benefits because of the confusing and conflicting manner in which it defines supplemental benefits. There is absolutely no evidence in the record that the either Carroll or ConAgra anticipated or intended that simply changing the manner in which Carroll was paid—a change which was designed only to shift his compensation to include more incentive-based remuneration—was intended to reduce his life insurance benefits.

### c. Accord and satisfaction.

On May 18, 2004, the court denied summary judgment to defendants on the issue of whether plaintiff's claims were barred by accord and satisfaction, holding that there were disputed issues of material fact regarding Ms. Carroll's intent to compromise her claim. Plaintiff has now moved for summary judgment on this issue.

The record reflects that on May 24, 2002, Mrs. Carroll's counsel, Vincent J. Booth, wrote to ConAgra indicating he wished to discuss the amount of benefits that were due. On June 3, 2002, ConAgra wrote to Booth explaining how benefits were calculated. On June 28, 2002, Booth wrote to ConAgra disagreeing with the benefits determination. In its letter to Booth of October 8, 2002, United's counsel explained its position on the amount of benefits that were due and notified him of the right to appeal the determination. Booth appealed the denial of Mrs. Carroll's claim for additional benefits. On November 6, 2002, United requested additional information supporting her position.

On November 27, 2002, United's Accounts Payable Department wrote directly to Mrs. Carroll inquiring about the drafts

that were previously sent to her. On December 13, 2002, United wrote to Booth and informed him that the benefit amounts it had previously calculated were correct, and "no additional benefits are payable."

On December 16, 2002, Booth wrote to the United Accounts Payable Department. Responding to its November 27th inquiry, Booth informed it that "Ms. Carroll has not cashed this check as there continues to be a dispute concerning the matter." On January 22, 2003, Booth again wrote to the United Accounts Payable Department, stating:

> In response to your letter dated November 27, 2002 I enclose herewith the "comments" section of said letter along with the original check number 0010341914. Please note that Ms. Carroll was unable to cash this check as it was past the "90–day limit." Please reissue a new check to the attention of Ms. Carroll's address and it will be deposited immediately.

This letter enclosed the November 27th letter, adding a handwritten notation at the bottom, dated January 17, 2003, stating "Bank would not cash past '90–day' limit please re-issue check and it will be deposited immediately. Thank you."

Mrs. Carroll filed suit on February 24, 2003. On February 25, 2003, United reissued the two drafts it had previously issued, increasing the amount of benefits to $151,522.52 to reflect accumulated interest. These drafts were sent to Mrs. Carroll along with a cover letter stating "Enclosed is payment for claim on this insured." Carroll signed both drafts and negotiated them on March 10, 2003.

■ Under Rule 56, the court "must resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contrary facts." *Matsushita Elec. Ind. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 8 of the Federal Rules of Civil Procedure lists accord and satisfaction as an affirmative defense, and defendants would accordingly bear the burden at trial of proving that Ms. Carroll consented to the compromise of her claim. *See Fischbach and Moore, Inc. v. Cajun Electric Power Cooperative, Inc.,* 799 F.2d 194, 198–99 (5th Cir.1986) (holding mutual consent is necessary for accord and satisfaction under Louisiana law). The court's earlier ruling denying summary judgment to defendants was entered six months prior to the close of discovery. The discovery cutoff has now passed, and defendants have provided no specific evidence that Ms. Carroll intended to compromise her claim, or that her acceptance of United of Omaha's $142,000.00 draft demonstrated this intent. Ms. Carroll did not sign a release when she accepted defendant's draft, nor any other document evidencing an intent to accept this payment in compromise her claim. Ms. Carroll's affidavit avers that she had no such intent. Accordingly, summary judgment on the issue of accord and satisfaction is granted to plaintiff.

### d. Attorney's fees.

■ "If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim and attorneys' fees." *Vega,* 188 F.3d at 302; see also 29 U.S.C. § 1132(g) (authorizing fee award). The Fifth Circuit has held that in deciding whether to award fees under this section of ERISA, the court should consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award

of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. No none of these facts is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

*Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). Considering the merits of plaintiff's position, the benefit that will be afforded to others in similar circumstances, and the abuse of discretion on the part of United of Omaha, the court finds that an award of attorneys' fees is appropriate under the facts and circumstance of this case, and refers this case to the magistrate judge for a determination of the appropriate amount of fees to be awarded to plaintiff.

## C. Conclusions.

ConAgra Foods, Inc.'s motion for summary judgment is granted. United of Omaha Life Insurance Company's motion *in limine* and motion for summary judgment are denied. Plaintiff Isabele J. Carroll's motion for summary judgment is granted, and the benefits due are $117,000.00 in basic benefits plus $175,000.00 in supplemental benefits, plus interest, less a credit to United of Omaha for $142,000.00 previously paid. Plaintiff's request for attorney's fees is granted, and this case is referred to the magistrate judge for a determination of the appropriate amount of fees to be awarded.